COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Kelsey
Argued at Chesapeake, Virginia


JAMES LEE REINKE
                                                            OPINION BY
v.        Record No. 1034-06-1                      JUDGE LARRY G. ELDER
                                                          MARCH 11, 2008
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
                        William H. Shaw, III, Judge

        Prescott L. Prince (Clarke & Prince, on brief), for appellant.

        Alice T. Armstrong, Assistant Attorney General II (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


        James Lee Reinke (appellant) appeals from the orders finding him in violation of the

terms of his suspended sentences for four counts of taking indecent liberties with a minor and

two counts of forcible sodomy.  On appeal, he contends the trial court erred in concluding it

lacked authority to relieve him of the condition of the suspensions requiring him to pay

restitution and in "fail[ing] to find that grounds existed" to justify removing that condition.  We

hold the trial court properly ruled that it lacked authority to modify the original restitution

requirement because it was a condition of the suspensions rather than a condition of probation.

Thus, the trial court properly held appellant responsible for the arrearage accruing from his

nonpayment pursuant to the terms of the original orders.  Nevertheless, when the trial court

revoked and resuspended the previously suspended sentences, the trial court had the discretion to

determine anew what conditions should accompany those suspensions.  Thus, we hold the trial

court erroneously ruled it lacked authority to entertain appellant's motion to reduce or eliminate

the restitution prospectively.  Accordingly, we affirm in part, reverse in part, and remand for

additional proceedings consistent with this opinion, including the correction of a clerical error in one of the sentencing orders.[1]

I.

BACKGROUND

On June 9, 2003, appellant was convicted in a bench trial for four counts of indecent liberties and two counts of forcible sodomy. The victims were three of appellant's four stepdaughters, whom appellant and the girls' mother, appellant's wife, had raised.

Prior to sentencing, appellant explained to the court that his wife was having financial problems and "was about to lose the [marital residence, titled in both names,] because she couldn't make the mortgage payment without [appellant's] income." When given an opportunity to speak, appellant indicated to the court that he received a military allotment and stated as follows:

> I'm concerned about my wife and kids, how they will get by if I'm not around. . . .
>
> [They] haven't moved back into the house yet, I'm pretty sure. I think that is a money thing, because it has got oil and hot water and propane gas for stove, and both of them are empty. She's got a broke down car that needs [to be] fixed. She doesn't make enough to do all of that. I want to be able to help her other than just a house payment.

The trial court continued the matter to obtain additional information about appellant's and his wife's financial situation, and at a subsequent hearing, the court engaged in the following colloquy with appellant:

> [THE COURT:] [Appellant,] we talked the other day, and I thought you were very correct in saying that you would like to see part of your retirement pay go to keep up the house payment for your wife and your stepdaughters. Did I understand that correctly?

---

[1] See infra notes 2 and 4 and accompanying text.

[APPELLANT:]  Yes, sir, my wife and I had agreed on that.

Appellant indicated that after making the house payment, "there's $150 left over in his military allotment, and he wanted that for himself."  The trial court responded, "You're exactly right.  So it's a very unique thing, your generosity, but I want to tell you your generosity has earned you some substantial reduction in sentence that I have in mind . . . [b]ut it's not going to be a free ride."  The trial court imposed a total sentence of 14 years 5 months for one of the sodomy counts but suspended 6 years 5 months.  It sentenced appellant to serve 14 years 5 months for the other sodomy conviction but suspended all of that time, and it sentenced him to 5 years for each of the four indecent liberties convictions but suspended all 5 years of each of those sentences, as well.  Thus, appellant received a total active sentence of 8 years.

All six sentencing orders, entered October 9, 2003, contained identical language suspending some or all of appellant's sentences conditioned upon good behavior, supervised probation, payment of court costs, and the following additional condition:

> *[Appellant] shall, during his period of incarceration, pay an allotment of $1,150.00 per month, which shall be paid from his airforce [sic] retirement, directly to his wife, and the balance of $150.00 shall be retained by [appellant] for his personal use while in prison.  The said allotment shall be paid to [appellant's] wife for house payments, maintenance of said residence and for general support of said wife and support of his [3 named] stepdaughters . . . .  This is the total amount due in Case Nos. CR03000072-00 through CR03000077-00.*

(Emphases added).

Appellant appealed his convictions to the Virginia Court of Appeals and Supreme Court without success.  Appellant did not assign error to the restitution condition or the court's authority to impose it, and he made all payments due thereunder through April 2005.

In the spring of 2005, Mrs. Reinke entered into a contract to sell the marital residence.  "[T]he deed was signed by power of attorney and upon [appellant's] notification that the home

needed to be sold." Mrs. Reinke received $33,000 from the sale of the home. Immediately after Mrs. Reinke sold the home, appellant ceased making the monthly restitution payments of $1,150. He first told her that he stopped making the payments because "he needed the money for a lawyer, and then he told [her] that he wanted his half of the proceeds from [the sale of] the house before he would pay [her] any more."

In October 2005, the Commonwealth moved the court to issue a rule to appellant "to show cause, if any he can, why *the sentences previously suspended*" on his four indecent liberties and two sodomy convictions "should not be revoked, and such other punishment imposed as the Court shall deem appropriate, because [appellant] has failed to pay restitution." (Emphasis added). Before the hearing on the rule to show cause was held, appellant moved the court to reconsider his sentences, claiming the court had lacked authority to order him to pay Mrs. Reinke $1,150 per month from his allotment and, thus, that this portion of his sentences was void. The court noted that appellant "agreed to the amount and source of the restitution." It held that, "[a]ssuming for argument that the sentence imposed by the trial judge was erroneous, the judgment was voidable only, and not void. The terms of the sentence were not challenged on direct appeal and cannot now be attacked collaterally."

At a hearing on April 3, 2006, the Commonwealth presented evidence showing appellant's failure to pay Mrs. Reinke $1,150 per month as required by the sentencing orders. Appellant claimed the requirement was a term of probation and that because the order stated his probation did not commence until he was released from incarceration, a finding that he violated probation was premature. He also asked the court "to entertain a motion to reduce the support since the home has been sold."

The trial court ruled the restitution payment was "a further condition of a suspended sentence" and was "not a condition of probation." The trial court also ruled the order requiring

the monthly payment was "a final order" and that it lacked the authority to modify or eliminate the required payment.

Based on its findings and the recommendation of the Commonwealth, the trial court revoked the six suspended sentences but resuspended them subject to "the same terms and conditions in the original sentencing order[s]" and the additional condition that appellant "satisfy the arrearage . . . in the amount of $500.00 per month beginning 60 days after his release from incarceration until said arrearage is satisfied." The court then entered orders dated April 4, 2006, reflecting the revocation and resuspension of those sentences.[2]

Appellant filed a petition for appeal, contending the order requiring the payment of restitution was void and that, even if it was not void, the trial court erred in failing to find that grounds existed to reduce or terminate the payment. This Court denied the petition in part, concluding, based on Code § 19.2-303 and the decision in Hartless v. Commonwealth, 29 Va. App. 172, 510 S.E.2d 738 (1999), that the trial court had authority to fix reasonable terms and conditions for the suspension of execution of a sentence. This Court also concluded that if the trial court erred in fixing the challenged conditions, that error was voidable rather than void and, thus, not subject to collateral attack. This Court granted appellant's petition only insofar as it claimed the trial court "erred in denying appellant's motion to amend the condition of appellant's suspended sentence providing for monthly payments of support to his wife."

---

[2] As to the conviction for which appellant had previously been sentenced to serve 8 years of active incarceration with an additional 6 years 5 months suspended, Docket No. CR03000076-00, the court's April 4, 2006 order erroneously stated that "all" "14 years 5 years [sic]" had been "suspended" at the hearing of October 2, 2003. Each of the April 4, 2006 orders indicated that "defendant is remanded to jail," but none of the orders contained a pronouncement of an active sentence under which he was being held. Neither party has raised this issue, but based on the inconsistency between the court's orders of October 9, 2003, and April 4, 2006, we remand for correction of this apparent clerical error. See Code § 8.01-428(B); Tatum v. Commonwealth, 17 Va. App. 585, 592, 440 S.E.2d 133, 138 (1994).

II.

ANALYSIS

Appellant claims this Court's determination that the trial court "has the authority to fix reasonable terms and conditions for the suspension of execution of a sentence" is "clear[ly]" a "determin[ation] that the 'restitution' Order is, in essence, a condition of probation" and, thus, that it is subject to be modified or amended pursuant to Code § 19.2-304 and our holding in McFarland v. Commonwealth, 39 Va. App. 511, 574 S.E.2d 311 (2002).[3] We hold the evidence supports the trial court's contrary conclusion that the payment was a condition of appellant's suspended sentences rather than a condition of probation and, thus, that the trial court correctly concluded it lacked authority to modify the condition pursuant to Code § 19.2-304. Thus, the trial court properly held appellant responsible for the arrearage accruing from his nonpayment pursuant to the terms of the original order. However, we conclude pursuant to Code § 19.2-306 that in revoking the sentences and resuspending them, the trial court in fact had the discretion to impose different conditions on the resuspension of those sentences. Because the trial court erroneously concluded that, upon resuspension, it lacked authority to remove the condition requiring the payment of restitution prospectively, we reverse in part and remand for additional proceedings consistent with this opinion.

As the Supreme Court has observed,

> Code § 19.2-303 permits the trial court, after conviction, to "suspend imposition of sentence or suspend the [execution of] sentence in whole or part and *in addition* [to] place the accused on

---

[3] Appellant, like McFarland, 39 Va. App. at 515 n.1, 574 S.E.2d at 313 n.1, argues only that Code § 19.2-304 permitted the trial court to modify the restitution order; he does not allege a factual predicate for the application of Code § 19.2-303, which permits "modif[ication of] the sentence imposed" or "the unserved portion of such a sentence" under certain circumstances where "a person [has been] *sentenced to jail* upon conviction of a misdemeanor or a felony . . . at any time before the sentence has been completely served" or where "a person has been sentenced for a felony to the Department of Corrections but has not actually been transferred to a receiving unit of the Department." Code § 19.2-303 (emphasis added).

probation." (Emphasis added.) Section 19.2-304 deals with probation only and permits the court to increase or decrease the period of probation or modify any condition of probation. . . . [Code § 19.2-303] also permits the court under specified circumstances to suspend or otherwise modify the unserved portion of a sentence and place the defendant on probation. . . .

*Consequently, we see the statutes as distinguishing between a suspension, . . . on the one hand, and probation, on the other hand.*

Grant v. Commonwealth, 223 Va. 680, 685, 292 S.E.2d 348, 350 (1982) (emphasis added).

Probation is an option available to the sentencing court as one of multiple "reasonable terms and conditions" the court has "the authority to fix . . . for the suspension of execution of a sentence." Hartless, 29 Va. App. at 175, 510 S.E.2d at 739.

"To be effective, probation must be concurrent with a coordinate term of suspension of sentence," [Hartless, 29 Va. App. at 175, 510 S.E.2d at 739,] but a court's authority to modify the terms of *probation* pursuant to Code § 19.2-304 does not give it the authority to modify any other terms upon which the *suspension* of a sentence was conditioned. Thus, Rule 1:1 governs. Subject to limited exceptions not applicable here, that rule provides that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."

McFarland, 39 Va. App. at 516, 574 S.E.2d at 313.

We applied these principles in McFarland, in which the defendant desired to have "remove[d] from the terms of his suspended sentence the condition that he keep the peace and be of good behavior." Id. at 516, 574 S.E.2d at 313-14. We noted the trial court had suspended the defendant's sentences and fines based on four express conditions, including that he "'keep the peace[ and] be of good behavior'" and that he "undergo 'supervised probation.'" Id. at 516, 574 S.E.2d at 314. When "[t]he trial court subsequently terminated [the defendant's] supervised probation[] as it was authorized to do pursuant to Code § 19.2-304," it conditioned that termination "on [his] 'future good behavior.'" Id. Thus, we noted "the requirement that [the

- 7 -

defendant] be of good behavior [not only] remained a condition of the suspension of his sentence [but] became a condition of the termination of his participation in supervised probation, as well." Id. at 517, 574 S.E.2d at 314. We ultimately held in McFarland that the trial court "was authorized pursuant to Code § 19.2-304 to remove the good behavior requirement as a condition of the termination of [the defendant's] probation" but that, because "more than twenty-one days [had passed since] the [trial] court's entry of its [original] sentencing order," "it lacked jurisdiction to alter the good behavior and related provisions imposed as conditions of the suspension of [the defendant's] sentence." Id.

These same principles apply in appellant's case insofar as appellant's original suspended sentences are concerned. In sentencing appellant following his six convictions, the trial court suspended some or all of each sentence upon four express conditions. Those conditions required that appellant "be of good behavior . . . for 25 years"; that he be "placed on supervised probation for a period of 3 years, to commence with his release from confinement"; that he "pay court costs of $355.00"; *and* that, "during his period of incarceration," he "shall . . . pay an allotment of $1,150.00 per month . . . directly to his wife . . . for house payments, maintenance of said residence, and for general support of said wife and support of his stepdaughters," the victims of the crimes for which he was convicted. Thus, in appellant's case, the condition of suspension requiring supervised probation was separate and distinct from the condition of suspension requiring him to make monthly payments of restitution. The fact that the sentencing orders expressly stated his probation was "to commence with his release from confinement" whereas the restitution requirement applied "during his period of incarceration" further highlights the fact that these terms were two separate conditions of the suspension of his sentences.

The fact that the clerk of the trial court, in issuing the form rule to show cause order to appellant, described the reason for the rule to be "to show cause why [appellant] should not be

found in violation of *the terms and conditions of probation*" does not require a different result. The Commonwealth, in its original filing, moved the trial court to issue a rule to show cause "why *the sentences previously suspended* . . . should not be revoked . . . because [appellant] has failed to pay restitution." (Emphases added). By order entered October 14, 2005, the trial court issued the requested rule and ordered the clerk to serve a copy of the order on appellant. Finally, following a hearing at which appellant argued the restitution requirement was a condition of probation, the trial court expressly ruled the restitution payment was a condition of the original suspended sentences rather than a condition of probation. Thus, appellant had notice that the Commonwealth viewed the restitution requirement as a condition of suspension and an opportunity to argue a contrary position before the trial court.

Because the restitution requirement was a condition of the original suspensions of appellant's sentences and appellant asked the court to modify that condition more than twenty-one days after its imposition by orders entered October 9, 2003, the trial court correctly ruled that Rule 1:1 prevented it from modifying the restitution requirement in those orders. Accordingly, the trial court also correctly ruled that appellant was required to pay the restitution arrearage. However, appellant's case is distinguishable from McFarland on other grounds. In McFarland, the defendant had not committed any violation of the terms of the suspension and came before the court voluntarily to request removal of the conditions of the suspension of sentence that were then in effect. McFarland, 39 Va. App. at 516-17, 574 S.E.2d at 313-14; see also Russnak v. Commonwealth, 10 Va. App. 317, 392 S.E.2d 491 (1990) (holding where the court did not revoke the suspended sentence, it lacked authority to modify the sentencing order that had become final by adding a condition of probation). In appellant's case, by contrast, appellant was brought before the court based on allegations that he violated the terms of the suspension of his sentences, and the court revoked and resuspended the previously suspended

sentences, subject to the conditions originally imposed and the additional conditions involving payment of his restitution arrearage in monthly installments commencing upon his release from incarceration.

Under Code § 19.2-306(C), a trial court "find[ing] good cause to believe that the defendant violated the terms of suspension" "shall revoke the suspension" but "may again suspend all or any part of this sentence and may place the defendant on terms and conditions or probation." The statutory language contains no indication that any limitations exist on the prospective terms and conditions the court may impose upon revocation and resuspension or that the trial court must reimpose the same terms and conditions imposed on the original suspensions. Instead, the language of subsection (C) makes clear that revocation of a previously suspended sentence and the resuspension of some or all of that previously suspended sentence is *a new sentencing event*, restricted only by limitations that it may not extend the length of the original sentence or the length of the period of suspension and, as is the case with an original suspension, that any conditions of suspension be reasonable. See Nuckoles v. Commonwealth, 12 Va. App. 1083, 1086, 407 S.E.2d 355, 356 (1991) (setting out limitations on conditions that may be imposed when a defendant is originally given a suspended sentence); see also Robertson v. Superintendant of the Wise Corr. Unit, 248 Va. 232, 236, 445 S.E.2d 116, 118 (1994) (noting that Code § 19.2-306 does not give a court "authority to lengthen the period of incarceration" once the sentence imposed on the underlying charge becomes final).

Here, when the trial court revoked appellant's suspended sentences, the court had authority pursuant to Code § 19.2-306(C) to determine anew what conditions should accompany those suspensions. Thus, the trial court's ruling that it lacked authority to remove the restitution condition of these sentences was error. Instead, the trial court was required to exercise its discretion to determine what conditions to impose on resuspension. In exercising that discretion

on remand, the trial court should take into account all relevant circumstances, including, *inter alia*, both the conditions that existed at the time of the original suspension of sentence, including the role the restitution condition played in the court's original formulation of the sentences, as well as the change in circumstances alleged to have occurred since that time.

III.

For these reasons, we hold the trial court properly ruled it lacked authority to modify the original restitution requirement because it was a condition of the suspensions rather than a condition of probation. The trial court also properly held appellant responsible for the arrearage accruing from his nonpayment pursuant to the terms of the original orders. However, we conclude that when the trial court revoked and resuspended the previously suspended sentences, the trial court had the discretion to determine anew what conditions should accompany those suspensions. Thus, we hold the trial court erroneously ruled it lacked authority to entertain appellant's request to reduce or eliminate the support on a prospective basis "since the home has been sold." Accordingly, we affirm in part, reverse in part, and remand for additional proceedings consistent with this opinion, including the correction of a clerical error in the April 4, 2006 order for Circuit Court Docket No. CR03000076-01, which erroneously indicates all of the sentence imposed for that offense was suspended.[4]

Affirmed in part,
reversed in part,
and remanded.

---

[4] See supra note 2 and accompanying text. The trial court's order of October 9, 2003 for the specified offense clearly indicates the court suspended only 6 years 5 months of the sentence of 14 years 5 months, leaving appellant with 8 years to serve.