UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Chafin and O'Brien
Argued at Norfolk, Virginia


RICHARD WILLIAM MAJESKI, III

MEMORANDUM OPINION[*] BY
v.      Record No. 2332-14-1      JUDGE RANDOLPH A. BEALES
OCTOBER 13, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Dean W. Sword, Jr., Judge Designate

Anthony J. Balady, Jr., Assistant Public Defender (Office of the
Public Defender, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Richard William Majeski, III (appellant) appeals the order of the Circuit Court of the City

of Suffolk requiring him to pay $250 in restitution per month as a condition of his suspended

sentence. Appellant contends that this order violated Rule 1:1 of the Rules of the Supreme Court

of Virginia by improperly modifying the original sentencing order more than twenty-one days

after the sentencing order became final.

I. BACKGROUND

On January 24, 2012, the trial court sentenced appellant to two years and six months of

incarceration with the Virginia Department of Corrections. The court suspended two years of

appellant's sentence for a period of five years, during which time it placed certain conditions

listed in the sentencing order on appellant. As one such condition of appellant's suspended

sentence, the trial court ordered appellant to pay the victims restitution of $12,500 through the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Suffolk Circuit Court Clerk's Office pursuant to a payment plan. The January 24, 2012 order did not contain a requirement to make specific monthly payments or a date certain by which appellant must fulfill his restitution obligation.[1]

Appellant was released from incarceration on December 26, 2012. As of September 2014, appellant had paid none of the required restitution and had yet to set up a payment plan. The trial court entered a show cause order on September 4, 2014. That order commanded appellant to show cause as to why the trial court should not revoke his suspended sentence for his failure to comply with the terms of his suspended sentence by failing to make restitution payments. On the day of the revocation hearing, November 20, 2014, appellant made a single payment of $40 to the clerk's office – the only payment he made – but did not set up a payment plan at that time. At the conclusion of the revocation hearing, despite his failure to set up a payment plan, as required in appellant's plea agreement,[2] the trial court found that appellant was not in violation of the terms of his suspended sentence and dismissed the show cause order. The trial judge stated, "I don't believe he's in violation because the way the order is drawn he's got until 2017 to pay it, but since he hasn't really made any serious effort of any kind to pay this, we're going to amend the order." The court then ordered appellant to pay $250 per month in restitution – with his first payment due on December 1, 2014. The trial court entered an order on November 21, 2014 that incorporated its ruling from the bench.

---

[1] While the trial court's January 24, 2012 order does not contain a date certain regarding full payment of restitution, we note that the trial court accepted a plea agreement on December 2, 2011. The first sentence of paragraph four of that plea agreement states, "The defendant further agrees that restitution, court costs, fines, if any, and then interest thereon, shall become due and payable on the date the Court sentences the defendant in accordance with this agreement."

[2] Paragraph four of the plea agreement states, "The defendant shall enter into a payment plan with the Clerk of the Suffolk Circuit Court for the payment of restitution, court costs and fines, if any, as soon as practicable following his/her sentencing and shall provide evidence of this payment plan to his/her probation officer."

## II. ANALYSIS

Appellant contends that the trial court misapplied the statutes and rules governing the modification of final orders and conditions of suspended sentences. Specifically, he argues the trial court modified the restitution condition of appellant's suspended sentence almost three years after the entry of the final order – well beyond the twenty-one days allowed by Rule 1:1. In Commonwealth v. Morris, 281 Va. 70, 705 S.E.2d 503 (2011), the Supreme Court stated that "Rule 1:1 and long standing case law applying that rule preclude a trial court from entering a second sentencing order altering an original sentencing order that has become final." Id. at 77, 705 S.E.2d at 506.

The Supreme Court did note in Morris that the General Assembly has enacted various statutory exceptions to Rule 1:1. Id. One such exception is found in Code § 19.2-304, which states, "The court may subsequently increase or decrease the probation period and may revoke or modify any condition of probation, but only upon a hearing after reasonable notice to both the defendant and the attorney for the Commonwealth." In interpreting that statute, this Court has determined that Code § 19.2-304 grants the trial court the authority to modify the terms and conditions of probation beyond the twenty-one-day limit of Rule 1:1, but the statute does not apply to terms and conditions of suspended sentences. In Reinke v. Commonwealth, 51 Va. App. 357, 657 S.E.2d 805 (2008), this Court held that "the trial court properly ruled it lacked authority to modify the original restitution requirement because it was a condition of the suspensions rather than a condition of probation." Id. at 368, 657 S.E.2d at 811; see also McFarland v. Commonwealth, 39 Va. App. 511, 517, 574 S.E.2d 311, 314 (2002) (finding that the trial court correctly determined that it "lacked jurisdiction to alter the good behavior and related provisions imposed as conditions of the suspension of [a] sentence more than twenty-one days after . . . entry of [a] sentencing order").

The Commonwealth has not argued that any of the statutory exceptions to Rule 1:1 apply to the facts of this case. Instead, the Commonwealth contends that Rule 1:1 was not implicated by the trial court's November 21, 2014 order, arguing that order merely enforced the January 24, 2012 order by establishing a specific payment plan. We disagree because the November 21, 2014 order creates new conditions that appellant must meet each month if he is to prevent his suspended sentence from being revoked so that he returns to active incarceration.

Based on the actions taken by the trial court, this Court must conclude that the November 21, 2014 order improperly modified the original sentencing order entered January 24, 2012 and thus violated Rule 1:1. While the Commonwealth argues that reversal here will have a negative effect on a trial court's ability to enforce its own orders, this ruling will not invade that authority. In fact, the revocation hearing in this case was a proper example of how trial courts can and do enforce prior criminal sentencing orders. Specifically, the revocation hearing allowed the trial court to determine whether appellant had abided by the terms of his suspended sentence. At the conclusion of the November 20, 2014 hearing, the trial court found that appellant had *not violated* the terms of his suspended sentence and dismissed the show cause order.

Pursuant to Code § 19.2-306(C), the trial court had the authority, upon a finding that appellant had violated the terms of his suspension, to revoke appellant's previously suspended sentence. By revoking, the trial court would have the discretion to re-suspend all or any part of the original sentence and would also have the authority to impose new terms and conditions upon appellant's newly suspended sentence. That simply did not happen in this case. In the absence of a finding that appellant violated the original sentencing order, the trial court lacked jurisdiction under Rule 1:1 to enter its November 21, 2014 sentencing order that added new terms and conditions to appellant's suspended sentence – almost three years after the trial court's final order. For that reason, the trial court violated Rule 1:1 by modifying the terms of

- 4 -

appellant's suspended sentence well more than twenty-one days (almost three years) after the original sentencing order became final.

Therefore, given the Supreme Court's clear case law attaching a great degree of importance to the finality of judgments, the role of Rule 1:1 as a tool to implement that policy, and the absence of a clear statutory exception to the operation of that rule,[3] we must reverse the trial court's order establishing new conditions. While the General Assembly is certainly able to enact by statute a new exception to Rule 1:1 to bestow the trial courts with the authority to modify the terms and conditions of a defendant's *suspended sentence*, it has not done so at this time. Finding that no exception to Rule 1:1 applies to the facts of this case, we hold that the trial court lacked authority to modify the terms of appellant's suspended sentence since it found that appellant had not violated the trial court's final sentencing order, and we, therefore, vacate the order entered on November 21, 2014 as violating Rule 1:1.

### III. CONCLUSION

Accordingly, for the foregoing reasons, we reverse and vacate the order of the circuit court dated November 21, 2014.

Reversed.

---

[3] See Byrum v. Lowe & Gordon, Ltd., 225 Va. 362, 365, 302 S.E.2d 46, 48 (1983) ("[J]udicial proceedings must have a certainty of result, and a high degree of finality must attach to judgments." (citation omitted)); Super Fresh Food Mkts. of Va., Inc. v. Ruffin, 263 Va. 555, 563, 561 S.E.2d 734, 739 (2002) ("[T]he provisions of Rule 1:1 are mandatory in order to assure the certainty and stability that the finality of judgments brings."); McEwen Lumber Co. v. Lipscomb Bros. Lumber Co., 234 Va. 243, 247, 360 S.E.2d 845, 848 (1987) ("Rule 1:1 implements that policy, and we apply it rigorously, unless a statute creates a clear exception to its operation." (citation omitted)).