COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, AtLee and Malveaux
Argued at Fredericksburg, Virginia


GALEN MICHAEL BAUGHMAN

                                                    MEMORANDUM OPINION* BY
v.      Record No. 0346-18-4                        JUDGE GLEN A. HUFF
                                                    DECEMBER 17, 2019

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

Zachary C. Schauf (David A. Handzo; Michael K. Lowman;
Jenner & Block LLP; Smith Pachter McWhorter PLC, on briefs),
for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General; Elizabeth Kiernan Fitzgerald, Assistant
Attorney General, on brief), for appellee.


Galen Michael Baughman ("appellant") appeals a series of probation conditions imposed

by the Circuit Court for Arlington County after he violated his original probation conditions.

Specifically, appellant challenges the conditions which require that appellant "remain on

supervision for the rest of his life" and forbid him from any "personal internet use."

Appellant raises three assignments of error. First, he asserts that the trial court erred in

imposing a lifetime ban on appellant's personal internet use in violation of the First Amendment

as interpreted by the Supreme Court of the United States in Packingham v. North Carolina.

Second, appellant argues that the trial court lacked jurisdiction to increase the period of

suspension beyond that set when appellant originally was sentenced in 2004. Third, appellant

argues that the trial court abused its discretion by sentencing appellant to lifetime probation

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

accompanied with various probation conditions based upon the conclusion that appellant was "grooming" a sixteen-year-old young man for future sexual conduct.

This Court disagrees. First, appellant failed to present his First Amendment challenge to the trial court. He has thus waived the challenge under Rule 5A:18. Second, the trial court has the authority to reset the terms of suspension and probation to whatever is reasonable under the circumstances when it revokes the suspension of a sentence and re-suspends some or all of the sentence. Thus, the trial court was not bound by the period of suspension set at appellant's original sentencing. Finally, the trial court did not abuse its discretion in placing appellant on probation for the rest of his life when it found that appellant had begun grooming another minor for sexual activity. That finding is supported by the record, and this Court will not disturb it on appeal. Therefore, this Court affirms.

## I. BACKGROUND

"This Court considers 'the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below.'" Hawkins v. Commonwealth, 64 Va. App. 650, 652 (2015) (quoting Bolden v. Commonwealth, 275 Va. 144, 148 (2008)). So viewed, the evidence is as follows:

On November 13, 2003, appellant pled guilty to aggravated sexual battery of a child less than thirteen years old, in violation of Code § 18.2-67.3, and carnal knowledge of a child between the ages of thirteen and fifteen years old, in violation of Code § 18.2-63. For the aggravated sexual battery conviction, appellant was sentenced to twenty years' incarceration with thirteen years suspended; for the carnal knowledge conviction, appellant was sentenced to ten years' incarceration with three years suspended. The sentences were to run concurrently. The circuit court imposed a ten-year period of suspension, which included a condition of

supervised release that prohibited appellant from having "unsupervised contact with any males or females under the age of (18), unless approved by his [probation officer]."

On February 18, 2015, while still on supervised release, appellant requested permission from his probation officer, Lynn McCardle, to travel to Minnesota to stay with and visit some family friends of his, the "F" family. In that request, appellant clarified that a sixteen-year-old minor member of the family, B.F., would be present on that trip, and appellant requested permission to have contact with that minor. McCardle gave appellant permission for contact with B.F. so long as "an adult [was] present."

After his February trip to Minnesota, appellant learned that B.F. had passed away as a result of an accident on August 23, 2015. Appellant asked permission from McCardle to attend B.F.'s funeral, which was to take place on August 29, 2015, and informed McCardle that there "would be other teenage boys" at the funeral. McCardle granted appellant's request, and re-emphasized that appellant should not "leave [himself] alone in situations with minors" and directed appellant to "ensure that there is another adult around . . . so that no one could level any allegations."

At the funeral, appellant met B.F.'s best friend, a then-sixteen-year-old boy, P.D. "[E]xcited about finding someone who would talk to him about B.F. and tell him things about B.F.," P.D. talked with appellant "at length" while appellant was in Minnesota. After leaving Minnesota, appellant maintained consistent communication with P.D. by way of text and phone conversations. He did not disclose those conversations to McCardle or receive permission from him to communicate with P.D.

After several months of communication between appellant and P.D., P.D.'s mother went through P.D.'s cell phone and discovered the conversations between appellant and her son. Concerned about the nature of these conversations and believing that appellant was "taking

advantage of her son's emotional situation regarding [B.F.'s] death," P.D.'s mother immediately contacted the Virginia State Police and McCardle to report appellant's conduct. From the months of January through April of 2016, P.D.'s mother cooperated with McCardle and provided relevant information in preparation for a major violation report that was submitted on April 8, 2017.

Based on the major violation report, a revocation hearing was held at the trial court on November 21, 2016. The primary focus of the hearing was whether appellant had "groomed" P.D. Both the Commonwealth and appellant called experts on the subject. Both generally agreed that "grooming" is the "methodology" by which a sex offender "establish[es] relationships with minors for the purpose of establishing a sexual relationship," which typically involves "befriending and establishing [an] emotional connection with a child or . . . the child's family in order to gain trust and lower the inhibitions of the child for sexual gratification."

The Commonwealth's expert opined that appellant's communications with P.D. demonstrated grooming. For example, appellant repeatedly made positive comments on the attractiveness of P.D., discussed the close "bond[s]" that he had with other minors, and even encouraged P.D. to use social media applications for conversations that could not be tracked by law enforcement or P.D.'s family:

> [By the way], you know to use Kik or Snap[chat] for the conversations you don't want to be seen, right? Even if you delete your texts the service provider (Verizon, AT&T, etc, [sic] can still provide a detailed log to the cops – or your parents who can be almost as bad!

Appellant's expert, Dr. Fred Berlin, testified grooming is a three-step process: "step one" referred to the establishment of a "relationship of trust" with the minor; "step two" referred to gauging the minor's interest in a sexual relationship; and "step three" referred to additional efforts by the groomer to turn his or her relationship with the minor "into a sexualized

- 4 -

relationship." Dr. Berlin ultimately testified that, in his expert opinion, appellant had no intention of turning the relationship sexual—i.e., was not grooming P.D. Although Dr. Berlin agreed that appellant's conduct could have been interpreted to have constituted "step one" of the grooming process, he also believed that appellant's conduct could have been interpreted as ordinary conduct that "anyone who has a genuine concern in a child might have." The trial court found appellant violated the terms of his probation by having unauthorized contact with a minor, P.D.

On January 6, 2017, at the sentencing hearing for the probation violation, the trial court—based on the methodology proffered by Dr. Berlin—determined that appellant "sufficiently completed the first step of the grooming process" when he violated his probation conditions through his communications with P.D. Accordingly, the trial court revoked appellant's probation and the suspension of his sentences. The trial court required appellant to serve one year in addition to the time served and re-suspended the balance of his sentence. Concerned with the nature of appellant's probation violation—that appellant "groomed" P.D.—the trial court placed appellant on indefinite probation and, as one of the conditions of that probation, required appellant to have "no personal internet use."

In his pre-sentencing memorandum, appellant had suggested such a condition: "[Appellant] makes no request for personal internet use whatsoever, or possession of devices that access the internet. [Appellant] would only ask permission to use the internet for work purposes on work devices." When the trial court imposed the condition as part of lifetime probation, appellant did not object or move for reconsideration. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews probation terms and conditions for abuse of discretion. Murry v. Commonwealth, 288 Va. 117, 122 (2014). A trial court abuses its discretion "when a relevant

- 5 -

factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; [or] when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352 (2011) (internal quotation marks omitted). However, to the extent that a review of the trial court's imposed probation conditions involves pure questions of law, those questions are reviewed *de novo*. Montgomery County v. Virginia Dept. of Rail and Public Transp., 282 Va. 422, 435 (2011); see also Porter v. Commonwealth, 276 Va. 203, 260 (2008) ("'[A trial] court by definition abuses its discretion when it makes an error of law.'" (quoting Koon v. United States, 518 U.S. 81, 100 (1996))); Shivaee v. Commonwealth, 270 Va. 112, 119 (2005) ("[C]onstitutional arguments are questions of law that we review *de novo*."). Moreover, "the 'authority of the trial court to revoke [an] appellant's suspended sentence is one of statutory interpretation and presents a pure question of law, which this Court reviews *de novo*.'" Green v. Commonwealth, 69 Va. App. 99, 103 (2018) (quoting Wilson v. Commonwealth, 67 Va. App. 82, 88-89 (2016)).

## III. FIRST AMENDMENT CHALLENGE

In his first assignment of error, appellant contends that the condition prohibiting him from using the internet for personal purposes violates his First Amendment rights. Specifically, he contends that Packingham v. North Carolina, 137 S. Ct. 1730 (2017), holds that convicted sex-offenders have a First Amendment right to access the internet and banning him from all personal use violates that principle.

Appellant failed to raise this issue with the trial court. Rule 5A:18 provides that "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or . . . to

attain the ends of justice." "Rule 5A:18 applies to bar even constitutional claims." Ohree v. Commonwealth, 26 Va. App. 299, 308 (1998). In order to preserve an issue for appeal, "an objection must be timely made and the grounds stated with specificity." McDuffie v. Commonwealth, 49 Va. App. 170, 177 (2006) (quoting Marlowe v. Commonwealth, 2 Va. App. 619, 621 (1986)).

Appellant acknowledges that he did not raise his First Amendment claim in the trial court. He argues that this Court should nevertheless consider his claim under either the "good cause" or "ends of justice" exceptions to 5A:18.[1]

First, the "good cause" exception is inapplicable here. "The Court may only invoke the 'good cause' exception where an appellant did not have the opportunity to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." Perry v. Commonwealth, 58 Va. App. 655, 667-68 (2011) (quoting Luck v. Commonwealth, 32 Va. App. 827, 834 (2000)). Appellant asserts that because Packingham had not been decided when the trial court imposed the condition forbidding personal internet use, "good cause" excuses his failure to raise the issue. Although Packingham had not been decided, appellant still could have raised an objection to the imposition of the probation condition forbidding personal internet use. The Supreme Court has required litigants to raise a general principle to preserve an issue even when new law significantly changes the analysis. See, e.g., McGhee v. Commonwealth, 280 Va. 620, 625 (2010) ("McGhee cannot invoke

---

[1] Appellant also argues that others have a First Amendment right to hear what he has to say and to communicate with him. He argues that he cannot waive the First Amendment rights of others. Although he may be correct in the abstract that the First Amendment rights of others are implicated by the restriction on his internet use, this Court need not decide that question. This Court concludes that he does not have standing to assert the First Amendment rights of others when he has waived his own First Amendment right. Cf. McCoy v. Commonwealth, 2 Va. App. 309, 311 (1986) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." (quoting Alderman v. United States, 394 U.S. 165, 174 (1969))).

[Arizona v.] Gant[, 556 U.S. 332 (2009),] on appeal when he did not object to the search incident to arrest below.").

Further, appellant suggested the condition.[2]  Appellant claims that his willingness to submit to the internet use restriction, when he had no reason to believe it would be lifelong,[3] is qualitatively different than a lifelong prohibition.  Even if that were true, appellant had the opportunity to object at the end of the hearing where the trial court announced it was imposing the condition as a part of lifelong probation.  Moreover, appellant could have moved for reconsideration at any time between the hearing of January 6, 2017 and the time when the trial court's orders became final twenty-one days after their issuance.  Cf. Simmers v. Commonwealth, 11 Va. App. 375, 377 (1990) ("At sentencing Simmers did not object to the conditions placed on his suspended sentence.  Further, he made no motion within twenty-one days of sentencing that the provisions be vacated, nor did he note an appeal from the decision of the trial court. . . .  [Therefore] he cannot prevail on appeal unless the trial court either lacked jurisdiction or imposed a sentence greater than that authorized by law.").  Thus, appellant had the opportunity to object to the probation condition as a violation of his First Amendment rights, and failed to do so.[4]  The "good cause" exception to Rule 5A:18 does not apply.

---

[2] Because this Court concludes that appellant failed to preserve the issue under Rule 5A:18, this Court need not decide whether appellant invited the error by suggesting the probation condition under the mistaken belief that probation would expire in only a few years.

[3] At the violation hearing—several months before appellant submitted his presentencing memorandum suggesting the internet restriction—the Commonwealth suggested that appellant "needs to be watched for every day, and week, and second, and month, and year for the rest of his life."

[4] Moreover, the restriction on using the internet is a condition of appellant's probation.  Thus, under Code § 19.2-304, the trial court has the authority to modify the condition.  The Commonwealth conceded at oral argument that appellant could move to modify the condition restricting his internet use based on the development of the law under Packingham.  Thus, despite his initial failure to object to the condition, he is not without a means by which to pursue

Second, the "ends of justice" exception is likewise inapplicable. "On appeal, a litigant may avail himself of the ends of justice exception and raise an unpreserved issue if the trial court's error 'was "clear, substantial and material."'" Mohamed v. Commonwealth, 56 Va. App. 95, 102 (2010) (quoting West v. Commonwealth, 43 Va. App. 327, 338 (2004)). "The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" Pearce v. Commonwealth, 53 Va. App. 113, 123 (2008) (quoting Bazemore v. Commonwealth, 42 Va. App. 203, 219 (2004) (*en banc*)). "Application of the ends of justice exception is appropriate when the judgment of the trial court was error and application of the exception is necessary to avoid a grave injustice or the denial of essential rights." Brown v. Commonwealth, 279 Va. 210, 219-20 (2010) (quoting Charles v. Commonwealth, 270 Va. 14, 17 (2005)). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221 (1997). "[A] manifest injustice occurs when a defendant receives a sentence beyond the power of a court to pronounce." Commonwealth v. Bass, 292 Va. 19, 30 (2016).

Appellant contends that a total ban on personal internet use was beyond the authority of the trial court. Thus, he contends, the ends of justice exception permits him to raise the issue for the first time on appeal, even though he never objected to the probation condition. This Court disagrees.

"'Inherent in the very nature of probation is that probationers "do not enjoy the absolute liberty to which every citizen is entitled," 'but only . . . conditional liberty properly dependent on observance of [probation conditions].'" Fazili v. Commonwealth, ____ Va. App. ____, ____

---

relief. Nevertheless, he must begin by presenting the issue first to the trial court for its resolution.

- 9 -

(Dec. 3, 2019) (alterations in original) (quoting United States v. Knights, 534 U.S. 112, 119 (2001), and Morrissey v. Brewer, 408 U.S. 471, 480 (1972)).  Nevertheless, even probationers retain a First Amendment interest in accessing the internet.  Id. at ____.  The trial court may only restrict that right to the extent that a "probation condition is narrowly tailored to effectuate either rehabilitative or public-safety purposes."  Id. at ____ (citing Packingham, 137 S. Ct. at 1737).  Significantly, however, nothing in Fazili or Packingham suggests that a probation condition prohibiting all internet use could not be justified in some circumstances.  Id. at ____ ("We do not foreclose the possibility that such a broad restriction on access to the internet could be justified in a particular case.").

Thus, a probation condition prohibiting any internet use is not "beyond the power of a court to pronounce," even if such a condition may be unjustified in many instances.  If the "ends of justice" exception permitted this Court to consider any argument that a probation condition is unjustified in a specific case, despite the trial court having authority to impose it when justified by the facts, the "ends of justice" exception "would obviate the requirement for making an adequate motion to strike or a contemporaneous objection."  Redman, 25 Va. App. at 221.  Therefore, appellant has failed to demonstrate a miscarriage of justice has occurred and this Court will not apply the "ends of justice" exception to Rule 5A:18.  If appellant had presented the trial court with his arguments regarding the expansive nature of the restriction on his internet use, the trial court could have tailored the condition to fit appellant.  Martin v. Commonwealth, 13 Va. App. 524, 530 (1992) (*en banc*) ("The primary function of Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials.").  He did not.  He, therefore, waived his First Amendment challenge to the probation condition.

## IV. AUTHORITY FOR LIFETIME PROBATION

In his second assignment of error, appellant asserts that the trial court erred in placing him on probation for the remainder of his life because the trial court did not also extend the suspension of his sentence.[5] He claims that probation cannot extend beyond the period of suspension. Moreover, he argues, even if the trial court did extend the suspension of his sentence, it did not have the authority to do so because Code §§ 19.2-303.1 and 19.2-303 only allow setting the period of suspension at a defendant's original sentencing. He also argues that this Court's decisions in Reinke v. Commonwealth, 51 Va. App. 357 (2008), and Canty v. Commonwealth, 57 Va. App. 171 (2010), forbid a trial court, during a revocation proceeding, from "extend[ing] . . . the length of the period of suspension." Canty, 57 Va. App. at 179 n.9 (quoting Reinke, 51 Va. App. at 368).

Appellant's arguments ignore a critical provision in Code § 19.2-306 and rely on dicta from Reinke, quoted by further dicta in Canty, that is in direct contravention of the holdings of several other decisions of this Court. Moreover, both of appellant's arguments—that the trial court did not extend the period of the suspension and, even if it did, it did not have the authority to do so—rest on a fundamental misunderstanding about the nature of the suspension of a sentence. Thus, it is necessary to begin with a brief explanation of the suspension of sentences before delving into the specifics of each of his arguments.

---

[5] The Commonwealth contends that appellant failed to preserve this assignment of error. Because analysis of the preservation of this issue is complicated by appellant's invocation of the "end of justice" exception to 5A:18, this Court concludes that resolving this issue on the merits is the "narrowest and best ground" for resolving this issue. Harvey v. Commonwealth, 65 Va. App. 280, 285 n.2 (2015) (holding this Court may resolve a case on the merits when it concludes "resolving the merits of the question presented constitutes the narrowest and best ground" for the decision).

A.  Suspension of Sentences

Code § 19.2-303 permits a trial court, when originally imposing a sentence, to "suspend the sentence in whole or part . . . under terms and conditions which shall be entered in writing by the court."  When a trial court suspends all or part of a sentence—especially in connection with probation—it is an "act of grace."  Hunter v. Commonwealth, 56 Va. App. 582, 587 (2010) (quoting Price v. Commonwealth, 51 Va. App. 443, 448 (2008)).  The defendant is relieved from serving all or part of his sentence but is subjected to conditions designed to rehabilitate him.  See Pierce v. Commonwealth, 48 Va. App. 660, 667 (2006).  The suspended sentence remains available to be imposed as a "real consequence[]" of violating the conditions of probation or the conditions of the suspension of the sentence.  Price, 51 Va. App. at 449.  Furthermore, and key to this case, the trial court may set the period of suspension of the sentence—i.e., how long the defendant must comply with the conditions or face imposition of the suspended sentence—"for a reasonable time, having due regard to the gravity of the offense, without regard to the maximum period for which the defendant might have been sentenced."  Code § 19.2-303.1.

When the trial court finds a defendant in violation of the terms of the suspension of his sentence it "revoke[s] the suspension of sentence."  Code § 19.2-306(A).  In plainer terms, the suspension of the sentence—including the term and conditions of suspension—no longer exists, and the entire remainder of the original sentence is imposed by operation of law.

If the trial court wishes to require a defendant to serve only a portion of the outstanding sentence, the trial "court may *again* suspend all or any part of this sentence and may place the defendant upon terms and conditions or probation."  Code § 19.2-306(C) (emphasis added).  The sentencing after revocation "is *a new sentencing event*."  Reinke, 51 Va. App. at 367.  Equally important, the decision to "again" suspend part of the sentence is a new *suspension of the sentence*.  See Briggs v. Commonwealth, 21 Va. App. 338, 343-44 (1995) (holding that when a

- 12 -

trial court revoked and re-suspended a sentence but did not explicitly set a period of suspension, the default period of suspension in Code § 19.2-306(A) began running from the date of the revocation and re-suspension, not the original sentencing); Wright v. Commonwealth, 32 Va. App. 148, 153 (2000) (holding that a trial court that re-suspended a sentence "on the same terms and conditions" as its original sentencing order created a new five-year suspension of the sentence rather than a suspension that expired five years from the original sentencing order). The trial court may choose to impose the same term of suspension and conditions of suspension that were imposed at the original sentencing, but it is not obligated to do so. If the trial court imposes the same term and conditions on re-suspension as the original suspension, the trial court is independently choosing to re-impose the same conditions.[6]

## B. The Trial Court's Order

In light of the foregoing framework, appellant's contention that the trial court erred in placing him on probation for life because it did not explicitly "extend" the suspension of his sentence for life is without merit. In a technical sense, a trial court never "extends" the period of suspension after a revocation. Instead, it independently sets the new period of suspension to expire at the same time, or a different time, as the prior, now revoked, period of suspension. Thus, when this Court considers the revocation and re-suspension order, this Court does not read into the order the previous period of suspension. Here, after revoking the original suspension, the trial court suspended, without stating the period of suspension, part of the remainder of appellant's sentence. It then placed him on probation for the rest of his life. Because probation

---

[6] Because all conditions on the suspension of a sentence must be reasonable in light of the circumstances of the case, the trial court cannot arbitrarily choose drastically different conditions of suspension without raising the possibility that the conditions are not reasonable. Nevertheless, the conditions of the new suspension are not derivative of the conditions of the prior suspension unless the trial court explicitly incorporates the original terms. E.g. Wright, 32 Va. App. at 153 (re-suspending a sentence after revocation "on the same terms and conditions" as the original sentencing order).

- 13 -

must be coupled with the suspension of the sentence, see Hartless v. Commonwealth, 29 Va. App. 172, 175 (1999) ("To be effective, probation must be concurrent with a coordinate term of suspension of sentence."), the only reasonable interpretation of the trial court's order is that it also suspended the remainder of appellant's sentence for the rest of his life.

## C.  The Trial Court's Authority

Appellant contends that even if the trial court suspended his sentence for life, it was error for it to do so because the trial court did not have authority to extend the suspension of his sentence beyond the term set in the original sentencing order.  Appellant points to language in Reinke (also quoted by Canty) stating that a trial court "may not extend . . . the length of the period of suspension," even after the revocation of the suspension of a sentence.  Appellant acknowledges that the holdings of Briggs and Wright are directly contrary to his position, but claims that Reinke and Canty create a direct conflict within this Court's jurisprudence and the rule stated by Reinke is more consistent with the statute.

Appellant's argument fails for two reasons.  The language he cites from Reinke and Canty is dicta.  Moreover, even if there were a conflict, the holdings in Briggs and Wright are consistent with the statutory scheme.

1.  Reike's language limiting the extension of the suspension of a sentence is dicta.

The language appellant relies on from Reinke is dicta.  In Reinke, the defendant had been ordered (with his consent) to pay support to his wife while he was imprisoned as a condition of the suspension of the remainder of his sentence.  The defendant ceased paying after several years, and the Commonwealth sought to revoke the suspension of the defendant's sentence.  He asked the trial court to reconsider his sentence and relieve him of the payment obligation.  The trial court concluded it did not have the authority to modify it.  This Court affirmed, but only in part.  It held that the trial court did not have the authority to retroactively modify the condition

- 14 -

that appellant pay support. This Court held, however, that the trial court erred in concluding it did not have authority to modify the support condition prospectively once it had revoked the initial suspension of appellant's sentence. This Court noted that when the trial court re-suspended the sentence it was "*a new sentencing event*, restricted only by limitations that it may not extend the length of the original sentence or the length of the period of suspension and, as is the case with an original suspension, that any conditions of suspension be reasonable." Reinke, 51 Va. App. at 367-68. The language that the trial court could not extend "the length of the period of suspension," however, was not relevant to the decision. The trial court did not extend the length of the suspension, and the length of the suspension was not at issue. Thus, the language that the trial court could not extend the length of the suspension of the sentence was dicta and is not binding.[7]

### 2. Briggs and Wright explicitly hold a trial court has the authority to extend the suspension of a sentence after a revocation.

Moreover, both Briggs and Wright explicitly hold that the length of the suspension of a sentence can be "extended"[8] when the suspension is revoked and the sentence is re-suspended. In Briggs, the trial court suspended the defendant's sentence; a year and a half later, it revoked the suspension and re-suspended the sentence. In neither instance did the trial court specify the length of the suspension of the sentence. When the defendant committed a new offense just shy

---

[7] Canty's quotation of the language from Reinke is likewise dicta. The issue in Canty was the authority of the trial court to consider misconduct by the defendant—that it had not previously considered but that had occurred before a revocation and re-suspension—as the basis for a later revocation. The authority of the trial court to "extend" the suspension was not at issue. Moreover, immediately after the quotation from Reinke, this Court cited Wright for the proposition that the trial court had the authority to "extend" the suspension when it revoked and re-suspended a sentence. Canty, 57 Va. App. at 179 n.9.

[8] The term "extended" is used in this fashion colloquially by many practitioners, by appellant, and by Reinke and Wright. In reality, the suspension of a sentence is never extended because a re-suspension with a new expiration is, by definition, a new sentencing event and a *new suspension*.

- 15 -

of ten years later, the trial court again revoked the suspension of his sentence. The defendant contended the trial court did not have the authority to revoke the suspension. He claimed the default suspension period under Code § 19.2-306 was measured from his original sentencing and thus had expired before he committed the offense. This Court rejected his contention. It held that the default suspension period was measured from the date of the re-suspension and thus the trial court had authority to revoke the suspension. Briggs, 21 Va. App. at 343-44. The implicit premise of that conclusion is that the trial court has the authority to set the term of suspension after revoking a previous suspension of the same sentence.

Similarly, in Wright, the trial court suspended the defendant's sentence for five years. It then twice revoked the suspension and re-suspended portions of the sentence "on the same terms and conditions," as the original order. The defendant was convicted of a new crime more than five years after the original sentencing but less than five years after the most recent revocation and re-suspension. During the next revocation proceeding, the defendant contended the trial court did not have the authority to revoke the suspension of his sentence because it had been more than five years since the first sentencing. This Court again rejected the argument. This Court held the trial court had intended to set new five-year terms each time it revoked and re-suspended. This Court also explicitly held that the trial court had the authority to extend the suspension in this fashion. Wright, 32 Va. App. at 153.

3. The Code permits a trial court to set, anew, the period of suspension when it re-suspends a sentence after revocation.

The holdings of Briggs and Wright—that the trial court has the authority to set an entirely new period of suspension without reference to the expiration of the period of suspension set in the original sentencing order—is entirely consistent with the statutory scheme for suspension of sentences.

Appellant claims that Code § 19.2-303.1 allows the trial court to "fix the period of suspension" only when the trial court "suspends" the sentence. He argues that the trial court only has authority to suspend a sentence under Code § 19.2-303 immediately "after conviction." Even if Code § 19.2-303 only allows the trial court to suspend a sentence immediately after conviction, however, Code § 19.2-306(C) allows the trial court to "*again* suspend" the sentence. Thus, in a new suspension after the revocation of the suspension of a sentence, Code § 19.2-303.1 still applies to allow the trial court to again set the length of the suspension. Thus, the holdings in Briggs and Wright are consistent with the statute and the trial court had the authority to suspend appellant's sentence for the remainder of his life after it revoked the previous suspension. Therefore, the trial court did not err by concluding it had the authority to place appellant on probation for the rest of his life.

## V.  REASONABLENESS OF PROBATION TERM AND CONDTIONS

Finally, in his third assignment of error, appellant makes two arguments. He argues that the trial court erred in finding that he was grooming P.D. He next argues that a lifetime of probation was not justified under the circumstances of his case. Neither argument has merit.

First, the trial court's finding that appellant was grooming P.D. is supported by the evidence. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Elliott v. Commonwealth, 277 Va. 457, 462 (2009). This Court gives "deference to the fact finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Id. Thus, this Court must accept "the trial court's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" Nobrega v. Commonwealth, 271 Va. 508, 518 (2006) (quoting Walker v. Commonwealth, 258 Va. 54, 70-71 (1999)).

"The power to segregate a witness's testimony into the believable, partly believable, or wholly unbelievable is an exercise of decisional discretion intrinsic to the factfinding task and essential to its proper performance." Harper v. Commonwealth, 49 Va. App. 517, 523 (2007). "Furthermore, a fact finder's evaluations of credibility are not limited to choosing between competing accounts offered by different witnesses, but often include, as in this case, resolving conflicts in a single witness' testimony, accepting that part of the testimony it deems credible and rejecting the portion it deems incredible." Commonwealth v. McNeal, 282 Va. 16, 22 (2011).

Here, the trial court had sufficient evidence to support its finding that appellant was grooming P.D. for future sexual activity. The Commonwealth's expert testified that the text messages between appellant and P.D. demonstrated appellant was grooming P.D.[9] Although appellant's expert opined appellant was not grooming P.D., he agreed that appellant's conduct could have been the first step and that at least some of appellant's text messages to P.D. were inappropriate, such as the message encouraging P.D. to use untraceable messaging apps to hide his conversations from his parents. Moreover, the trial court had the text message before it. There was sufficient evidence to accept Dr. Berlin's opinion that appellant's conversations fit within step one of the grooming process and reject his ultimate conclusion that appellant was not grooming P.D. Thus, the evidence supports the trial court's factual finding that appellant was grooming P.D., and this Court will not disturb that finding on appeal.

---

[9] Appellant claims the trial court rejected the Commonwealth's expert's testimony and thus that testimony cannot support the finding that appellant was grooming P.D. The trial court, however, did not reject the Commonwealth's expert testimony. It found it unnecessary to rely on the Commonwealth's expert because it found appellant's expert testimony sufficient to find appellant was grooming P.D. Because the trial court did not explicitly find the Commonwealth's expert incredible, this Court can rely on his testimony as evidence to support a finding appellant was grooming P.D. Perry v. Commonwealth, 280 Va. 572, 580 (2010) ("[A]n appellate court's 'examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling.'" (quoting Bolden v. Commonwealth, 275 Va. 144, 147 (2008))).

Second, the trial court could properly conclude that lifetime probation with the conditions it imposed was reasonable in light of the circumstance. "The sole statutory limitation placed upon a trial court's discretion in its determination of such conditions is one of reasonableness." Anderson v. Commonwealth, 256 Va. 580, 585 (1998). "Probation conditions must be reasonable in light of the nature of the offense, the defendant's background, and the surrounding circumstances." Murry v. Commonwealth, 288 Va. 117, 122 (2014).

Appellant contends that the Supreme Court's decision in Murry, 288 Va. at 130, necessitates reversal of appellant's lifetime probation. In Murry, at the defendant's initial sentencing after conviction for the rape of his stepdaughter, the trial court placed the defendant on probation for the rest of his life. It found the defendant had been grooming his stepdaughter for years and concealing it from the rest of his family. One of the conditions of probation was that he submit to any search demanded by his probation officer or law enforcement, even if the demand was not based on any individualized suspicion. The Supreme Court held that as a "total surrender of [the defendant's] Fourth Amendment Rights," the condition was not "necessary to facilitate his rehabilitation and protect the public." Id. at 127-28. Tellingly, however, the Supreme Court discussed how a narrower search provision might have been justified and did not hold that lifetime probation was unjustified under the circumstances.

Although appellant discusses how the conditions of his probation impact his constitutional rights, he only requests this Court reverse the trial court's imposition of lifetime probation, not any of the specific conditions.[10] Thus, this Court need only examine the limitations of appellant's rights to the extent that the conditions make lifetime probation unreasonable. Here, the trial court's imposition of lifetime probation was justified.

_____

[10] Appellant does challenge the personal internet use condition, but as noted earlier, he has waived his challenge to that specific condition by failing to raise it in the trial court.

First, unlike in Murry, the trial court did not impose lifetime probation at the initial sentencing.  Although both the defendant in Murry and appellant were convicted of sexually abusing minors, here, the trial court only imposed lifetime probation after appellant violated the conditions of his original probation by grooming another minor.  Second, although appellant's privacy, associational, and travel rights may be restricted to some degree, none of the conditions appellant complains of result in the "total surrender" of a constitutional right.  Finally, although the Supreme Court in Murry invalidated the search waiver condition, it did not hold that imposing lifetime probation on the defendant was improper.

Here, where appellant was convicted of sexually abusing minors and had prolonged unauthorized contact with another minor whom the trial court found was being groomed,[11] the trial court did not abuse its discretion in determining appellant needed to be supervised for the remainder of his life.

## VI.  CONCLUSION

First, appellant waived his First Amendment challenge to the probation condition restricting his internet use.  He failed to raise the issue in the trial court, and Rule 5A:18 now bars its consideration by this Court.

Second, the trial court had the authority to place appellant on probation for the rest of his life.  The trial court implicitly suspended appellant's sentence for the remainder of his life when it placed him on probation indefinitely.  The trial court had authority to do so because a

---

[11] Appellant repeatedly argues that the trial court erred in taking into account the grooming because P.D. was sixteen years old and therefore above the age of consent in Minnesota where he lives.  Regardless of whether P.D. was above the age of consent in Minnesota, the trial court could reasonably conclude that grooming P.D. was inappropriate and justified further monitoring through probation.  Appellant claims that even if the "grooming" led to sexual activity, it would not have been the "new offense" the trial court was concerned about.  This ignores the fact that if appellant's grooming of P.D. led him to sexual activity in Virginia, it would be criminal.  See Code § 18.2-371.

re-suspension of a sentence after the revocation of a previous suspension is a new suspension, and the period of the new suspension is not restricted by the period of a previous suspension.

Third, the decision to place appellant on probation for life was reasonable and not an abuse of discretion when the trial court found, with sufficient support in the record, that appellant had been grooming another minor for sexual activity.

Therefore, this Court affirms.

<u>Affirmed.</u>